UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILSON F. J.,** | Civil Action No. 20-4641 (SDW) |
| Petitioner, | |
| v. | **OPINION** |
| **JOHN TSOUKARIS, et al.,** | |
| Respondents. | |

**WIGENTON,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Wilson F. J., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 3). Following an order to answer, the Government filed a response to the petition and motion (ECF No. 7), to which Petitioner has replied. (ECF Nos. 10-12). For the following reasons, this Court will deny the petition without prejudice and will deny the motion as moot in light of the denial of Petitioner's habeas petition.

**I. BACKGROUND**

Petitioner is a forty-one year old native and citizen of the Dominican Republic who entered the United States illegally without admission or inspection on an unknown date more than twenty years ago.[1] (Document 2 attached to ECF No. 1 at 3; Document 7 attached to ECF No. 7 at 2). During his time in this country, Petitioner has amassed a considerable criminal history, including

---

[1] Petitioner apparently told immigration officers that he last entered the United States via a plane trip to Puerto Rico in 1994, but there was no record of him ever having legally entered the United States. (Document 8 attached to ECF No. 7 at 2-3).

at least ten arrests since 2007. (Document 8 attached to ECF No. 7 at 3). In October 2009, Petitioner was convicted of criminal trespass in New York. (*Id.*). On December 28, 2017, Petitioner was arrested in New Jersey on charges of terroristic threats, stalking, and contempt of court related to his violating a domestic violence order. (*Id.*). On April 2, 2018, Petitioner pled guilty to a downgraded criminal mischief charge, and his remaining charges were dismissed. (Document 5 attached to ECF No. 10). Petitioner was also arrested in January 2018 on additional charges including criminal mischief, criminal contempt, and burglary, for which he was later indicted. (*Id.*). It is not clear from the record whether these charges remain pending based on the evidence in the record and the parties appear to dispute whether this second set of charges has been dismissed or otherwise disposed of by the state court. (*Id.*; ECF No. 7 at 6; Document 5 attached to ECF No. 10; ECF No. 10 at 6). Petitioner was apparently committed to the Trenton Psychiatric Hospital between January and July 2019 for a pending determination of whether he was competent to stand trial, possibly on these disputed charges. (Document 2 attached to ECF No. 1 at 3). On December 17, 2019, Petitioner was taken into immigration custody and placed in detention pursuant to the Government's discretionary detention authority under 8 U.S.C. § 1226(a), where he has remained since that time. (Document 7 attached to ECF No. 7).

  Upon his arrival at the Essex County Correctional Facility, Petitioner was given a medical evaluation. (ECF No. 11 at 10). During this evaluation, Petitioner was noted to have some dental issues and athlete's foot, and informed medical staff that he had historically had problems with knee and back pain which had resolved, but was otherwise healthy. (*Id.*). Petitioner was provided medication for his athlete's foot and his history of knee and back issues were noted. (*Id*. at 12). Petitioner next sought care on January 2, 2020, at which time he complained that, due to his weight, he was unable to climb onto or sleep in his assigned top bunk. (*Id.* at 14). Petitioner was thereafter

given a medical transfer to a bottom bunk. (*Id.* at 14-15). Because Petitioner also had tooth pain, he was prescribed pain medication and was scheduled to be seen by the jail's dentist. (*Id.* at 16). Petitioner was seen by the dentist the following week, at which point he was scheduled for a dental x-ray, was provided further pain medication, and was scheduled for a tooth cleaning and dental follow-up appointment. (*Id.* at 17-18). Petitioner was thereafter seen by medical staff on February 3, 2020, but refused treatment at that time. (*Id.* at 20-21). It is not clear what the refused treatment entailed, but it apparently involved blood work. (*Id.*). Petitioner was seen again by medical staff on February 6, 2020, after his involvement in an altercation to be cleared for placement in a secured housing unit. (*Id.* at 23-24). No injuries were noted at that time. (*Id.* at 24-25). On February 9, 2020, Petitioner was given a mental health assessment, at which point he was found to be psychiatrically stable. (*Id.* at 26-27). Petitioner had another dental appointment on February 13, 2020, at which point Petitioner received a dental prophylaxis. (*Id.* at 29). Petitioner thereafter sought treatment for back pain on March 27, 2020, which resulted in him receiving pain medication. (*Id.* at 31). The parties have not supplied Petitioner's jail medical records for April 2020 and beyond.

On April 18, 2020, Petitioner was suspected of having contracted COVID-19, apparently as a result of his having a fever. (ECF No. 7 at 7; Document 2 attached to ECF No. 10 at 3). He received an antibody test which indicated that Petitioner was likely infected with the virus and in the process of recovering and developing immunity to the virus. (ECF No. 7 at 7). Petitioner was placed in a quarantine cell by himself and kept there until he had apparently recovered, at which point he was released back into a standard detainee unit, which occurred on either April 22 or April 24. (ECF No. 7 at 7; Document 2 attached to ECF No. 10 at 3). During his time in isolation, Petitioner was seen daily by a nurse, at which time his temperature was checked and he was given,

at the very least, a multivitamin.² (Document 2 attached to ECF No. 10 at 3). Petitioner apparently no longer has any signs or symptoms of infection. (ECF No. 7 at 7).

According to Petitioner's medical expert, he suffers from obesity, high cholesterol, gastro-esophageal reflux, chronic back and knee pain, and mental health issues including "delusional psychosis." (Document 11 attached to ECF No. 1 at 18). Petitioner's expert opines that Petitioner's obesity places him at heightened risk of complications were he to become infected with COVID-19, and further asserts that Petitioner's cholesterol issues could put him at risk of heart disease which could further expose him to complications. (*Id.*). The expert also contends that Petitioner's continued detention, including his temporary placement in restrictive confinement following an altercation at the jail, could cause him to have some form of mental break. (*Id.*).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his

---

² Petitioner apparently told his immigration counsel that he was given a multivitamin but "did not think he was given any medicine." (Document 2 attached to ECF No. 10).

claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition and briefing in this matter, Petitioner argues that he should be released from immigration detention because he has been subjected to punitive conditions of confinement and has received insufficient medical care in light of his medical history, viral infection, and the general threat posed by the COVID-19 epidemic. As this Court recently explained in *Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2 (D.N.J. Apr. 21, 2020), conditions of confinement claims generally are not cognizable in a habeas petition, but both the Supreme Court and Third Circuit have suggested in the past that such claims may serve as the basis for habeas relief in "extreme cases" where exceptional circumstances require the application of a habeas remedy such as release to alleviate the alleged constitutional harm. *Ali v. Gibson*, 527 F.2d 971, 975 n. 8 (3d Cir. 1978), *superseded by statute on other grounds as stated in Callwood v. Enos*, 230 F.3d 627, 633 (3d Cir. 2000); *see also Ziglar v. Abbasi*, --- U.S. ---, ---, 137 S. Ct. 1843, 1862-63 (2017). The parties in *V.S.*, as here, agreed that the COVID-19 pandemic was a "significant and extraordinary situation warranting a particularized response," this Court "assume[d]" in *V.S.* that the danger of COVID-19 was sufficient to warrant permitting a conditions of confinement claim seeking a habeas remedy. *Jorge V.S.*, 2020 WL 1921936 at *2. Although this Court will assume for the sake of this opinion that COVID-19 remains a sufficiently significant and extraordinary situation to warrant considering a conditions of confinement claim seeking habeas relief in this case, the Court finds that Petitioner's mental health issues which pre-existed and are largely unrelated to COVID-19 notwithstanding Petitioner's brief stay in isolation for his

own benefit and the benefit of other detainees as he recovered from his viral infection, are not so extraordinary to warrant permitting him to seek his release through a conditions of confinement claim on that basis. Thus, while the Court will address the merits of Petitioner's COVID-19 related claims, this Court finds that Petitioner's mental health related claims do not require a habeas remedy and therefore serve as no basis for release.[3] *Id.*; *Ziglar*, 137 S. Ct. at 1862-63; *Ali*, 527 F.2d at 975 n. 8.

In any event, assuming the COVID-19 pandemic is a sufficiently severe circumstance that would warrant permitting a habeas claim based upon Petitioner's remaining conditions of confinement claims, claims such as Petitioner's

> could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under [the circumstances], *see, e.g.*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v.*

---

[3] Even were this not the case, Petitioner has failed to show that jail staff were deliberately indifferent to his medical needs. Nothing in the record presented to this Court suggests that Petitioner demonstrated a direct need for mental health treatment during his time in Essex County, and when he was placed briefly in restrictive housing after he had an "altercation" with persons unknown, Petitioner was granted a psychiatric evaluation which indicated he did not need further treatment at that time. The allegation of Petitioner's immigration counsel that Petitioner may require treatment to permit him to "meaningfully participate" in his removal proceedings in no way establishes that Petitioner requires medical treatment for his own health or safety, and is a matter for the immigration judge at Petitioner's upcoming competency hearing, and not this Court, to decide. This Court finds the speculation of Petitioner's medical expert that continued incarceration or isolation could lead to some sort of "mental break" similarly unavailing. Thus, as there is no direct evidence that Petitioner suffers from a sufficiently severe mental need that is not being met, and as Petitioner has failed to show that jail staff knew of, and disregarded that need, Petitioner's mental health related deliberate indifference claim would fail even were this Court inclined to consider it.

*Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's insufficient treatment or deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthma] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to

> constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).
>
> . . . .
>
> . . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

*Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020).

Turning first to Petitioner's conditions of confinement, it is clear that the Government has a legitimate interest in securing aliens during their removal proceedings. *Jennings*, 138 S. Ct. at 836. The Court further finds that Petitioner has not shown an express intent to punish on the part

of jail staff.  Thus, he can only succeed on his conditions of confinement claim by showing that the conditions applied to him in immigration detention are arbitrary, purposeless, or excessive in relation to the Government's interest in detaining him. Having reviewed the record of this matter, it is clear that the conditions to which Petitioner is subject are not excessive in relation to that interest and are neither arbitrary nor purposeless.

The Essex County facility and its staff have taken numerous concrete steps to alleviate and mitigate the risk COVID-19 presents to its inmate population.  The facility has limited or eliminated access to the jail by outside volunteers, visitors, and contractors to the extent feasible; increased both on call and always on site medical staff and has at least two nurses and a nurse practitioner on hand at all times with doctors on call for emergencies during off hours; increased health monitoring and sick call access for detainees; increased needed supplies; hired additional staff and increased cleaning and sanitizing of the jail to several times a day; and acquired stockpiles of masks and other protective equipment. (Document 5 attached to ECF No. 7).  The jail has also developed medical protocols for dealing with and treating suspected COVID-19 cases under which those with illness or symptoms are medically evaluated, those with severe or moderate symptoms are sent to the hospital for testing or treatment, while those with only mild or no symptoms are instead quarantined, monitored, and treated.  (*Id.* at 8-10).  Likewise, asymptomatic individuals who have been exposed to known cases have been moved to a separate unit with "ample room for social distancing" where they remain for at least fourteen days.  (*Id.* at 9).  The jail has also increased and removed limits to soap and water access to detainees, and has provided sanitizing cleansers to staff for use upon detainee request.  (*Id.* at 9-10).  Considered in the aggregate, these efforts to alleviate the threat of COVID-19 clearly indicate that the conditions under which Petitioner is detained are rationally related to the Government's legitimate interest in detaining

aliens during the pendency of removal proceedings, are not excessive in relation to that purpose, and are neither purposeless or arbitrary. Petitioner has therefore failed to show a valid basis for habeas relief in his conditions of confinement claim, and that claim is therefore denied.

Petitioner's deliberate indifference to medical needs claim fairs no better as a basis for habeas relief. Here, Petitioner's medical records indicate that he was given a thorough intake screening, and that on each occasion that he sought treatment prior to the COVID-19 outbreak, he was seen and provided diagnostic testing, treatment, and appropriate medication. Likewise, when Petitioner began to exhibit symptoms of COVID-19 in April, apparently including a moderate fever, he was given an antibody test, isolated from the general population, and monitored daily by nursing staff while his symptoms quickly abated. Nothing in Petitioner's filings indicate that he has any serious untreated medical conditions, and the record instead indicates he was provided adequate treatment for each of his medical issues and was placed in quarantine for his own protection and the protection of other detainees when he showed signs of a viral infection. In light of the timely medical treatment and monitoring Petitioner received throughout his time at the jail and the considerable steps the jail has taken to mitigate the threat COVID-19 presents to Petitioner and other immigration detainees, Petitioner has failed to show that jail staff have acted with deliberate indifference towards him. His medical needs claim thus fails to present an adequate basis for habeas relief. *V.S.*, 2020 WL 1921936 at *2-4. As Petitioner has failed to show that he has either been exposed to punitive conditions or that jail staff have been deliberately indifferent to his medical needs, Petitioner's habeas petition fails to set out a valid basis for habeas relief, and his petition is therefore denied. Petitioner's motion seeking a temporary restraining order is in turn denied as moot in light of the denial of his petition.

## III. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE and his motion seeking a temporary restraining order (ECF No. 3) is DENIED as moot in light of the denial of his habeas petition. An appropriate order follows.


Dated: May 15, 2020                                *s/Susan D. Wigenton*
                                                                    Hon. Susan D. Wigenton,
                                                                    United States District Judge